USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/26/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KIM YANCEY,

                                  Plaintiff,

-v-

LH HOSPITALITY LLC d/b/a JANE, and ROCINANTE CORP.,

                                  Defendants.

16 Civ. 1855 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

In 2016, plaintiff Kim Yancey brought the original lawsuit in this case against LH Hospitality LLC ("LH Hospitality"), then the owner and operator of the restaurant "Jane," and Rocinante Corp. ("Rocinante"), the building's landlord, under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and New York Human Rights Laws for, *inter alia*, failure to install an ADA-accessible ramp. On November 22, 2016, the parties entered into a consent stipulation, Dkt. 34 ("Stipulation"), which this Court so-ordered. Yancey now seeks enforcement of the Stipulation, arguing that LH Hospitality and Rocinante have failed to comply with its terms.

For the reasons that follow, the Court holds that LH Hospitality and Rocinante have violated the terms of the Stipulation and grants Yancey's motion to enforce it.

## I. Background

### A. Procedural History

On March 11, 2016, Yancey filed the original complaint, Dkt. 1, and on March 15, 2016, filed an amended complaint. Dkt. 5 ("AC"). On May 31, 2016, Rocinante answered and included a crossclaim against LH Hospitality. Dkt. 18. On June 14, 2016, LH Hospitality

1

answered the amended complaint. Dkt. 26. On June 27, 2016, LH Hospitality answered Rocinante's crossclaim. Dkt. 27. On July 13, 2016, the Court held an initial conference and issued a case management plan setting the close of fact discovery at November 14, 2016. Dkt. 31. On November 21, 2016, Yancey filed a proposed consent stipulation between all parties. Dkt. 33. On November 22, 2016, the Court so-ordered the Stipulation. Dkt. 34. On December 15, 2016, the Court issued an order of discontinuance and the case was closed. Dkt. 35.

On November 6, 2018, nearly two years later, Yancey filed a motion to reopen and enter judgment, Dkt. 36, and a declaration in support, Dkt. 37. On November 8, 2018, the Court denied that motion, noting that Yancey had released all claims under the Stipulation. However, the Court invited Yancey to file a motion to enforce the Stipulation. Dkt. 38.

On November 13, 2018, Yancey filed a motion to enforce the Stipulation, Dkt. 41, and a declaration in support, Dkt. 42 ("Weiss. Decl."). On December 14, 2018, Rocinante filed a memorandum of law in opposition, Dkt. 54 ("Rocinante Mem."), and a supporting declaration, Dkt. 53 ("Samman Decl."). Also on December 14, 2018, LH Hospitality filed a memorandum of law in opposition, Dkt. 56 ("LH Mem."), and a supporting declaration, Dkt. 55 ("Lefcourt Decl."). On December 18, 2018, Yancey filed a reply memorandum, Dkt. 58 ("Pl. Reply"), and a supporting affirmation. On January 24, 2019, Yancey filed a supplemental reply affirmation. Dkt. 59.

B.  **Factual Background**[1]

In her Amended Complaint, Yancey alleged that she suffers from a degenerative bone disease, requiring the use of a wheelchair for mobility. AC ¶ 6. She alleged a number of barriers to her access of the restaurant "Jane," including a raised metal platform from 3 to 8 inches tall, which extends across the entire storefront and prevents stepless access from the sidewalk. AC ¶ 15. On November 7, 2016, the parties entered into a Stipulation, Stipulation at 7, which the Court so-ordered on November 22, 2016, Dkt. 33.

Shortly after the parties signed the Stipulation, LH Hospitality assigned its lease at the subject premises and sold the assets of the restaurant "Jane" to "New Jane LLC." Lefcourt Decl. ¶ 2. That transfer was effective December 18, 2016. *Id.* LH Hospitality transferred funds into an escrow account maintained by its counsel for the benefit of New Jane LLC to satisfy the terms of the Stipulation. *Id.* ¶ 3. LH Hospitality further provided another sum of money to Rocinante, the landlord, in case the remedial measures required additional funding. *Id.* ¶ 4. Rocinante and New Jane LLC agreed that those funds were to be used to pay for the cost and expense of the remedial measures contemplated by the Stipulation. *Id.* ¶ 5. LH Hospitality no longer owns or operates "Jane" or has any interest in the subject premises. *Id.* ¶ 3. Yancey was not a party to the agreement between LH Hospitality and New Jane LLC, and the Court, whose so-ordered Stipulation stood to be affected by the agreement, was not notified either.

On June 15, 2017, Yancey's attorney, Donald J. Weiss, Esq., received an email from LH Hospitality's counsel, Joseph P. Wodarski, III, Esq., requesting an additional three months to

---

[1] To the extent the facts in the following section refer to post-stipulation events, the Court draws these facts from the declarations filed by each party in connection with the motion to enforce the consent stipulation.

3

install the ramp based on "good faith efforts." Weiss Decl. ¶ 6; *see also* Weiss Decl. Ex. B. Yancey agreed to that request. Weiss Decl. ¶ 6.

Rocinante now claims to have relied on inaccurate measurements at the time it signed the Stipulation, and to have been incorrectly advised that the specifications for the ramp described in the Stipulation were feasible. Samman Decl. ¶ 7. In fact, he attests, he was later informed that the metal platform in front of the premises is more than five inches above street level. *Id.* ¶ 9. In order to meet the steepness guidelines of the Stipulation, the ramp would therefore need to be no less than 32 inches long. *Id.* A ramp that extended this far from the edge of the raised metal platform would extend no less than 14 inches past the doorframe of the main fire egress for the residential tenants of the subject premises, which would be deemed an illegal obstruction to the building's fire egress. *Id.* ¶ 10.

Rocinante therefore consulted an architect, Joseph Smerina, and an engineer, RGL, to determine the feasibility and cost of removing all or a portion of the raised platform and replacing it with an ADA-compliant ramp. *Id.* ¶ 11. Smerina reported that it would be difficult, expensive, and time-consuming to carve a ramp into the east side of the platform, partially as this would require disturbance of a "100 year old masonry barrel vault." *Id.* Ex. C (Smerina Report) at 3. The work, Smerina reported, also might involve disturbance of the fire sprinkler system, which would require the tenants to vacate unless there was temporary fire protection in place. *Id.* RGL's report projects expenses of more than $100,000, with approvals required from three separate agencies. *Id.* (RGL Report) at 2.

On August 1, 2018, Mr. Weiss received an email from Rocinante's counsel, Emil Samman, Esq., asking Mr. Weiss to contact Mr. Samman to "discuss" the matter. Weiss Decl. ¶ 8. Mr. Samman then sent Mr. Weiss an email stating that "[a] permanent ramp would cost the

4

board over $100,000 which would be an unreasonable burden on them." *Id.* ¶ 9; *see also* Samman Decl. ¶ 15.

On August 9, 2018, Mr. Weiss emailed Mr. Samman asking, *inter alia*, that Rocinante consider alternate remedial plans. Weiss Decl. Ex. C. Rocinante claims that Yancey rejected unspecified "alternative proposals" from Rocinante. Samman Decl. ¶ 16. However, Mr. Weiss denies receiving any further communication from representatives of any defendant after August 9, 2018, despite follow-up emails on August 29 and 30 to all counsel. Weiss Decl. ¶ 13.

## II. Applicable Law

The Second Circuit has clearly set out the standards governing enforcement of a consent stipulation or a consent decree:

> Consent decrees are a hybrid in the sense that they are at once both contracts and orders, *see United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236 n.10 (1975); they are construed largely as contracts, but are enforced as orders. *See Schurr v. Austin Galleries*, 719 F.2d 571, 564 (2d Cir. 1983); [*United States v.*] *Am. Cyanamid Co.*, 719 F.2d [558,] 563–64 [(2d Cir. 1983)]. It is recognized that a consent decree represents a compromise between parties who have waived their right to litigation and, in the interest of avoiding the risk and expense of suit, have "give[n] up something they might have won had they proceeded with the litigation. . . . For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *United States v. Armour & Co.*, 402 U.S. [673], 681–82 [(1971)]; *see also Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561 (1984).
>
> The Court is not entitled to expand or contract the agreement of the parties as set forth in the consent decree, *see Artvale, Inc. v. Rugby Fabrics Corp.*, 303 F.2d 283, 284 (2d Cir. 1962) (per curiam), and the explicit language of the decree is given great weight. *See Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 892–93 (9th Cir. 1982). By the same token, deference is to be paid to the plain meaning of the language of a decree and the normal usage of the terms selected. *See United States v. Atlantic Refining Co.*, 360 U.S. 19, 22–23 (1959).

*Berger v. Heckler*, 771 F.2d 1556, 1567–68 (2d Cir. 1985). Additionally,

> [c]onsent decrees are subject to continuing supervision and enforcement by the court. A court has an affirmative duty to protect the integrity of its decree. This duty arises where the performance of one party threatens to frustrate the purpose of

the decree. A defendant who has obtained the benefits of a consent decree—not the least of which is the termination of the litigation—cannot then be permitted to ignore such affirmative obligations as were imposed by the decree.

*Id.* at 1568 (quotation marks, citation, and footnote omitted).

Because "[e]nsuring compliance with a prior order is an equitable goal," to enforce a consent stipulation, a court is empowered to pursue equitable remedies "even absent a finding of contempt." *Id.* at 1569 (citation omitted).

### III. Discussion

#### A. Subject Matter Jurisdiction

At the outset, the Court affirms its subject matter jurisdiction over the enforcement of the Stipulation. LH Hospitality has argued that "to the extent that Plaintiff seeks to re-open the action and re-assert her statutory claims against LH Hospitality, the Court would lack subject-matter jurisdiction." LH Mem. at 5.

That is wrong. Yancey does not seek to re-open this action nor to re-assert statutory claims. Rather, Yancey moves to enforce the court-approved Stipulation. When Yancey initially filed a motion to reopen, Dkt. 36, the Court explicitly recognized that this was Yancey's proper avenue for relief under the Stipulation. In denying Yancey's original motion to reopen, the Court observed:

> Under the parties' [C]onsent Stipulation, plaintiff released all claims against defendants and plaintiff's counsel separately agreed not to pursue claims under the ADA, or similar claims, against defendants. Plaintiff, however, retained the right to sue under the Stipulation and to enforce it. Plaintiff is at liberty to bring such an action in this District.

Dkt. 38. Yancey then moved for enforcement of the Stipulation.

The Court retains jurisdiction over such a motion. "Courts have inherent jurisdiction to enforce consent decrees" such as the Stipulation in this case. *Roberson v. Giuliani*, 346 F.3d 75, 83 (2d Cir. 2003). Indeed, the Supreme Court has noted that "a provision 'retaining jurisdiction'

6

over the settlement agreement[] or . . . incorporating the terms of the settlement agreement in the order [would make breach] a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 381 (1994). Here, the "[p]arties agree[d] that venue for any litigation brought to enforce this Stipulation shall lie in the United States District Court for the Southern District of New York." Stipulation ¶ 8.

Because the entire agreement was contained in a Stipulation so-ordered by the Court, and the Stipulation identified this Court as the proper venue for enforcement, this Court retains continuing subject matter jurisdiction to enforce the Stipulation as an Order of the Court.

**B.     Violation of the Stipulation**

Yancey alleges that Rocinante, the corporate landlord of the building that houses the restaurant "Jane," and LH Hospitality, the hospitality company that owned "Jane" at the time of the Stipulation, have together breached the Stipulation into which they entered in several ways.

First, no permanent ramp has yet been installed in front of "Jane," although the Stipulation required that one be installed within six months. Weiss Decl. ¶¶ 4, 16. Second, although the Stipulation provided for a temporary ramp if an application for a permanent ramp received final denial from a city agency, defendants have not in fact applied to any city agency for a ramp, despite applying for various other work at the subject property. *Id.* ¶ 15. These facts are not disputed. Instead, both Rocinante and LH Hospitality claim that they have satisfied the Stipulation because they attempted to install a permanent ramp; they claim that such installation has become impossible due to factors beyond their control. *See* Rocinante Mem. at 3–7; LH Mem. at 3–4. LH Hospitality further claims that it has satisfied its obligations under the Stipulation because it no longer has any control over the subject property and placed funds in escrow for any remedial measures. LH Mem. at 3–4. Rocinante further claims that it should be

7

excused from installing a permanent ramp and allowed to install a temporary ramp under the doctrine of commercial impracticability. Rocinante Mem. at 8–10.

The obligations of LH Hospitality and Rocinante under the Stipulation's contractual provisions are clear. The Stipulation defined "LH HOSPITALITY LLC D/B/A JANE" as "the 'Restaurant,'" and the location of the restaurant, 100 W. Houston Street, New York, New York, as "the 'Property.'" Stipulation at 1. LH Hospitality and Rocinante are defined collectively as "Defendants." *Id.* The Stipulation provided, in pertinent part, the "following remedial actions at the Property, which shall be at the Restaurant's sole cost and expense":

> a) Install a permanent, ADA compliant ramp which would allow Plaintiff and other wheelchair bound patrons to enter the Restaurant, provided, however, Plaintiff will accept a ramp slope of 1:6 for a distance of not more than two feet. No other slope exceeding 1:8 will be permitted. The installation of said ramp shall be completed within six months of the date of this Stipulation (the "Start Date"). The time period for the installation of said ramp shall be subject to events beyond the control of Defendants, such as delay in obtaining approved building or zoning permits (application for which shall be filed no later than 30 days from the Start Date), failure of the [sic] any government inspectors to make inspections, contractor defaults, work stoppages or slow-downs due to labor-related disputes or severe weather conditions (*e.g.*, snow storms and hurricanes), acts of God, *force majeure*, acts of war or terrorism, and the like. In the event of such unforeseen circumstances, it is agreed that upon a showing of diligent efforts to comply with the terms of this Stipulation, the Restaurant may request from Plaintiff's counsel an extension of time to complete the said installation, which consent shall not be unreasonably withheld. Within 30 days of the installation of the ramp, the attorneys for the Restaurant shall notify Plaintiff's counsel and shall furnish photograph(s) of the completed ramp.
>
> In the event a final denial issues by any governmental agency prohibiting the installation of a permanent ramp, Defendants will be excused from installing such ramp and Plaintiff will accept a temporary ramp which is at least 36 inches wide and has a slope no greater than 1:8 as a means of entry into the Restaurant. Defendants warrant that they will work with the DOB, DOT and the LPC, and any other agency involved in the permit process, to revise the plans for the said ramp in accordance with any recommendations in order to obtain an approved plan for an accessible entrance. For purposes of this Agreement, a final denial shall result if: (i) a NYC agency (including the DOB, DOT or LPC) raises objections to any plan which cannot be overcome by plan modification, provided however, that no plan shall include a ramp or platform which extends more than 44 inches onto the

8

sidewalk; and (ii) an application for waiver for any portion of a plan which varies from any law, statute, code provision or ordinance is denied and which denial cannot be overcome by plan modification and/or is not the result of an administrative issue. Defendants agree that a waiver which has been denied based on a finding that alternatives which insure the achievement of the intended objective or which, without a loss in the level of safety, achieve the intended objective more efficiently, effectively or economically, shall not constitute a final determination, in which case defendants agree that they shall submit a plan providing for such alternative(s).

*Id.* at 2–3.

The Court finds that defendants are in clear violation of the Stipulation. Defendants do not dispute Yancey's assertion that they have to date not submitted any application to any city agency with proposed plans for a permanent ramp. Under the plain terms of the Stipulation, defendants were to do so within 30 days of its execution on November 7, 2016. Defendants' various counter-arguments are unavailing.

Defendants first argue that they are entitled to an extension on account of their ostensibly reasonable efforts towards this end. But Yancey, as contemplated by the Stipulation, already granted defendants one three-month extension so as to give them time to revise their plans, as contemplated by the Stipulation, on June 15, 2017. *See* Weiss Decl. ¶ 6. Yancey's denial, in August 2018, almost two years after the execution of the Stipulation, of Rocinante's counsel's request for another extension was plainly reasonable, given defendants' failure to document even a single instance of an application to a city agency.[2]

---

[2] *Kreisler v. McDonalds Corporation*, No. 09 Civ. 9358 (DAB), 2013 WL 3242704 (S.D.N.Y. June 27, 2013), on which Rocinante relies to excuse its violation of the contracted time within which it had to install a compliant ramp, Rocinante Mem. at 6–7, is inapposite. In *Kreisler*, the defendant solicited proposals for an entrance ramp from numerous contractors but none provided an ADA-compliant ramp proposal; the defendant then obtained three proposals for non-ADA-compliant ramps, and was denied a permit by DOB. The defendant then explored installing a $100,000 chair lift, for which DOB also refused to issue a permit. Moreover, the defendant in *Kreisler* was only a month-to-month lease owner and, once it obtained a long-term lease, took steps to obtain approval for a full renovation. *See Kreisler*, 2013 WL 3242704, at *1. The

9

Defendants next argue that imposing a permanent ramp would be difficult and costly. Under the Stipulation, such arguments fail. The Stipulation was negotiated at arms-length. It, notably, does not impose any cost limitation on any proposed solution to the problem of access to the subject premises. Nor does it list any cost-related hurdle in its extensive list of "events beyond the control of Defendants" that could justify deferring the deadline for installing a ramp. Stipulation at 2. The contracting parties were certainly aware of cost considerations. Defendants were at liberty to bargain so as to impose, in the Stipulation, cost limitations on any remedial measures. Having chosen not to insist on a term making the remedial obligation contingent on cost, defendants are now bound by the contract into which they entered and which they asked the Court to approve. That such remedial measure would prove more challenging and expensive than defendants expected when they resolved the case with no escape clause for higher-than-expected costs was a risk defendants knowingly undertook. It likewise does not void the Stipulation that defendants' architect assertedly had given them erroneous measurements at the time of the Stipulation; defendants do not claim misrepresentations by the party with whom they contracted, Yancey. Rocinante Mem. at 3–4.[3] Defendants' legal claims, if any, as to any such architectural miscalculation are against the architect. Further, as Yancey rightly notes, had the case not settled, discovery would have probed possible remedial solutions, including whether various solutions were economically viable. Pl. Reply at 4–6 & n.3. Defendants chose instead to settle based on the information they had at the time.

---

receipt by defendants here of a single proposal from an architect and a single workup of that proposal by an engineering company pale in comparison.

[3] The Court notes, in any event, that the measurements on which Rocinante claims to have relied at the time of the settlement discussions are dated March 23, 2017, more than four months after the parties signed the Stipulation. *See* Samman Decl. Ex. A. While Rocinante perhaps received notice of these measurements prior to the Stipulation, there is no record evidence of that.

10

Defendants claim, third, to have been excused from installation of a ramp on account of commercial impracticability. That argument, too, is unavailing. In the Stipulation, the parties set out the circumstances under which a permanent ramp would be deemed infeasible so as to justify the installation of a temporary ramp. The Stipulation noted the possibility of difficulties securing city agency approval, and thereby provided that, upon denial from any agency whose approval was necessary, defendants would be excused from the installation of a permanent ramp. *See* Stipulation at 2–3. Defendants now claim to have been advised by an engineer and an architect that, as to one potential solution, agency approval may be difficult to secure. But under the Stipulation, that does not absolve defendants from trying; they have an explicit obligation in the Stipulation to attempt to work with city agencies towards a solution. Defendants' failure to do so breaches their duties under the Stipulation and deprives the parties of full information as to what the pertinent city agencies may view as the most practical option for ramp installation.

LH Hospitality, finally, claims to be excused from its obligation simply because it no longer has control over the subject premises. That is wrong. The Stipulation does not contain any provision releasing LH Hospitality from its duty to perform in the event that it later sold "Jane." And LH Hospitality did not seek judicial reformation of the Stipulation at the time of the sale so as to transfer its obligations to the buyer. (Indeed, LH Hospitality did not notify the Court, which on request had approved the Stipulation as a court order, of this transaction, despite the fact that LH Hospitality transferred its interest over "Jane" just a month after the Stipulation was executed.) LH Hospitality cannot contract away its obligations to plaintiff under a court order without court approval. (In any event, LH Hospitality does not represent that under its contract with "New Jane LLC," the buyer assumed its obligations under the Stipulation.) LH Hospitality thus remains obliged to meet its duties under the Stipulation.

## CONCLUSION

For the foregoing reasons, Yancey's motion to enforce the Stipulation is GRANTED. The Court therefore ORDERS defendants to:

1. file for all necessary permits to install a permanent, ADA-compliant ramp to provide wheelchair patrons access to the subject premises, the restaurant "Jane," within 30 days of the issuance of this Order;

2. take any and all action required by any governmental agency to modify any submitted plans as soon as practicable after receiving notice of such requirement;

3. install such permanent, ADA-compliant ramp within 60 days of the receipt of any necessary permits; and

4. pay reasonable attorneys' fees sustained by Yancey as a result of filing the motion to enforce.

The Court further orders counsel for Yancey, by March 26, 2019, to file a letter on the docket documenting reasonable attorneys' fees incurred as a result of filing the instant motion to enforce for the Court's approval. Any opposition by defendants to the tabulation of these fees is due by April 2, 2019. By April 20, 2019, defendants shall file a joint letter on the docket, updating the Court with their efforts to comply with this Order.

The Clerk of Court is respectfully requested to terminate the motion pending at Dkt. 41.

SO ORDERED.

_Paul A. Engelmayer_
Paul A. Engelmayer
United States District Judge

Dated: March 20, 2019
      New York, New York